the court as I understand at the start of oral argument, the court always reminds me we've already read our briefs, you already know the facts, you already know our arguments. Let me begin by just this aggravated sexual abuse as it applies possibly as a crime of violence for the purpose of 941c gun counts. This is a case of first impression. I believe one court in North Carolina started to address the issue but did not fondly rule that way. And what the court typically does is the offense under the elements clause has to typically require some proof of violence and but what became a problem in this case is the very reason that this court granted the COA. And if I could put this in a different order, the jury actually had that as a question during the trial and they asked the court, before you get to the modified categorical approach applied to 242 and 2241, two sort of threshold questions. One, the 28J letter that they filed citing Lott, which you responded to, part of what I thought the government was offering it for wasn't what you responded to it about and that is that it would be your client's burden to show by a preponderance that he actually was a constitutional residual clause. And once again, your honor, first of all, the residual clause, what's left of it, it was declared unconstitutional. I understand what the court's asking me. But we would also say this with respect to, specifically with respect to this case, and that is, I hope I put this in my response to his 28J. If I didn't, I should have. And that was that he told the court he gave them a charge. The jury had the very question, basically, that his honor was having. No, I know, but in order for you to make the argument, don't you have to be able to point to something in the record that, more likely than not, his original conviction was under the residual clause, not the elements clause? And if so, where do we find that in the record? And very simple, and once again, in the court's first or second page of its own opinion, he defined what happened as a push. That's all, was that he pushed her into that car. And that's on page two of the trial court's order. As I understand the question, setting aside the elements clause for the moment, I think that's what you're asking me to do, your honor, and just talk about it under the residual clause. And under either one, what we're saying is ... There's a twist in the law. It's building on clay, but Lott reinforced it. It's a hard standard for you to meet. Yes. And we will concede that ... Well, let me ask a related question then, this may be more specific. Am I right, and do you remember that in 2016, a motions panel of our court in this case said that his particular conviction rested on, satisfied the elements clause? Yes, it does. I'm aware of that. Why isn't that law the case here? Why doesn't that resolve the case? And respectfully, the only place I should go to to answer that question, I apologize, it'll take me a moment to find it, was that when the court, when this court granted the COA, not this court, excuse me, the district court, having known completely about everything and the appeal, he said his very words are ... He granted this COA because he believed it was possible that it did not require proof of violence and permitted an inference of force. And I would submit that would belong to the elements clause as well as the residual clause. I think it's the best way for me to respond to that, Your Honor, because I agree, he's never gone back to it. And I don't think Lott solves the problem for them either, Your Honor, because Lott involves, is my understanding, my recollection, a Hobbs Robbery Act case. No, I guess, and I'll just try one more time. It doesn't matter because I want to let you get your argument. I'm sorry if I'm being stubborn, Your Honor. Well, the 2016 panel decision, which was published, the order- Yes, sir. Explicitly says that your client was convicted under the elements clause. It satisfies the elements clause. I thought you said residual a minute ago. I apologize, Your Honor. And so the government hasn't pressed this, but it's just an uncertainty I've had. In other words, why is there any opportunity to debate whether or not 2242, count three conviction, satisfies crime of violence when a panel in this very case said it did? I guess, basically, the first reason is over the past three or four years, we have seen the whole statute debated time and time again. Once again, he granted us a COA on this specific, and I know you're tired of me saying that, but I'm aware that is exactly what the court did, and that's what we're up against. And I think the best place for me to start, that court, being aware of what he, why he was affirmed, he said back to that, well, there's still a COA here. There's still an issue that was open for him. And that COA is why we're here. Okay, go ahead with your argument. Yeah. Your Honor, and it was, and since they cited Lott, they failed to mention, and I think it, even under either clause, it would matter, what type of offense are we talking about? Lott, and they didn't put this in their 28J letter. They didn't tell us what was the actual underlying predicate crime of violence. And it was a armed, a Hobbs armed robbery. And that charge, that statute does not have the same problems we have with aggravated sexual abuse as we do in this case. And that's why one of the reasons that we put, I don't know if we put that in the 28J letter, but let me add it again, that, that once again, it involved a completely different crime of violence. And once again, this district court, even after the court ruled the first time, said the one act that took place was he pushed her into the car. And as we begin to look at, at the whole definition that we see that the courts are of crime of violence, we submit that obviously that is not sufficient to, for a crime of violence to be where he only pushed her in the car. And being very aware of the 2016 opinion is not our best friend right now, Your Honor. Another thing, and you know, the district court, no one objected, and you and the government accept that when it was instructing the jury on 242, it drew reference, according to Fifth Amendment, it responded to a jury note. If I could just get, yeah, I understand the original charge was that way. Okay. But then. Under 2241, would you disagree that, that his prior conviction was for Clause 1? No. And, and once again. Clause 1, aggravated sexual assault conviction. And here's. Are you agreeing that the jury instructions referenced 2241? The, the original instructions did. The only thing I would like to get is, is, and we discussed this in our brief, in a jury note, he, he said back, respectfully, back to the jury. He described it as restraint sufficient to present the victim from escaping. And then when he grants his COA, which we, we, I think we have to give some room to, when he granted that COA, he, he questioned himself. Is there a sufficient element of a finding of, of, that this was indeed violence? And that's the way, that's the very reason he sent it back down. Even the court may have said that in 2016, when he grants the COA, he once again says that that problem is still here, based on the case as a whole. One of the things that happened here is because the jury became concerned about the very issue we're dealing with, whether there's sufficient force to show aggravated sexual abuse. And one of the things he said back, he said it was enough when he employs restraint sufficient to prevent the victim from escaping. And once again, we submit under the elements clause, that's, that doesn't, doesn't line up with the definition they used there. And therefore, that charge is what ultimately went to this jury. And that's one of the main reasons we're saying that there is problems with this finding, that it is a sufficient predicate violent felony to trigger the use of the residual statute. But, John, I want, Your Honor, I want to make sure, I do concede that. That's exactly what he did on the first charge in the prior case. I've read it, and, but I don't think it ends the issue. Because of all the issues that, if I could, Your Honor, when all of the courts, and, and, and the attorneys that were addressing the courts, we didn't have Davis yet. And I think Davis may not necessarily change the charge that the judge charged, or the elements that he used. What it may have changed, Your Honor, and we believe it does, it changes how we analyze the whole thing. There's a reason that not a single court has said aggravated sexual abuse is a crime of violence for 941C. North Carolina started to, but they backed off of it. Because all they could say was we . . . No, no court has said it isn't either. That's true. But, and, Your Honor, we have a lack of courts that have addressed it. But the court, the only court that didn't address it, the North Carolina court . . . When we look at the Shepard approved documents in this case, you're agreeing that the conviction here rests on a clause one offense. It started there. However, and what we're saying is that since Davis has come along and the courts have begun to explore it, that's where his note to the jury comes along, and it steps away from the type of crime of violence that's supposed to be . . . I'm sorry, is it . . . Is the four minutes part of the 15? I'm making sure I'm not going over . . . You'll have four minutes. Okay. And once again, I hope . . . I'm aware that's a difficult question to answer. I might say we now owe it's positive because of what this court said on this case four years ago. Nonetheless, this case, this offense has been . . . And by the way, let me pause for a moment and slow down. I am not making light of aggravated sexual abuse. I'm trying to answer the court's question. I wanted to make sure the court understands. I'm aware that this is a horrible crime. I didn't want to . . . And when you said original jury instructions as opposed to what other jurors . . . I'm sorry, Your Honor? You said original jury instructions. I asked you about instructions and you said original jury instructions. Well, no, no. This is . . . The jury had a question. And they were struggling with, well, do we have to do aggravated sexual abuse? And how much force does there need to be? And that's when the judge . . . I'll read it, the main part of it. Aggravated sexual abuse means knowingly causing another person to engage in a sexual act by using force. He then says, however, to find the defendant used force, you need not find that the defendant was violent. A defendant uses force sufficient to prevent the victim from escaping sexual contact. Force can also be implied, and this is where the problem takes place. Force can also be implied from a disparity in size and coercive power. And that's what he says in the COA in this case. And that was part of the charge that he suggested to . . . This was . . . I'm sorry, not part of the charge. I'm requesting from the jury, hence part of the charge. But you're agreeing that there was an instruction given to the jury which referenced 2241? Absolutely. The initial instructions say that. I can't deny that. And then, I mean, you probably would push back, but it seems like then the jury actually had to find force. They may have been permitted to infer it, but they did have to find force. And that's . . . And that also is why that triggers the judge, the district court judge's COA. He himself says that they could have implied force from the mere size and disparity in the fact that he was a police officer. And once again, there is . . . The only violence here, per the district court, was he pushed her into the back seat. And once again, Your Honor, we're aware, we're walking a . . . And I'll concede this. I'm walking a very thin line from what's already happened at the district court level. And that that's already been up here before this court. But what we're doing, Your Honor, is we think Davis may have changed the breadth of the extent of the argument we might make with respect to the statute now. And once again, no other court having to do it. And this is the district court. After this court's first opinion that said, well, you know, there's a door open here as to whether or not we have made that clear to the jury that disparity in size does not equal a violent offense. And if I were to make one central statement with just one sentence, Judge, that would be it. Because I am aware completely of what the first court said. And if I were to summarize my brief quickly, that's basically what I hope I did, hope I tried to do. I'm not saying I was successful in doing that. Yeah, I would tell my client the first decision was pretty tough on him. But once again, the court pulled back and saw that we may be . . . we might just be inferring that from a difference in size and perhaps the fact that he was a police officer. And I'll give . . . Mr. Fowler? May it please the Court. Charles Fowler for the United States. The district court correctly denied relief for three reasons. First, under 2244B, the court should have dismissed the motion because the original conviction did not rely on the residual clause. Second, Mr. Guidry's motion is time . . . That's a lot of argument, right? Yes, Your Honor. Did you preserve that argument below? We didn't make the argument below. We've made it for the first time on appeal. I'll concede that. But for two reasons, it's still properly before this court. First, our brief cites this court's decision from 2020 in United States versus Smith, which says that in the 2255 context in reviewing the denial of a motion de novo, it can dismiss or deny relief on a ground that was not presented to the district court. So for that reason, we're able to bring it for the first time on appeal. Beyond that, this court's precedents treat the gating requirements in 2244B as jurisdictional. Now, I'll note that the government's position is that the 2244B gating criteria are non-jurisdictional claim processing requirements, but this court is bound by its precedents, holding that it's jurisdictional, which would allow, you know, of course, the court to consider it for the first time on appeal. So just to get into the meat of that, it was going to be the first issue I was going to touch on, so I'll just talk a little bit more about it. I think it's probably the most clear-cut, straightforward way to resolve this case, provided the court's comfortable that it can reach the issue, even though we know that the court held in Clay, as Judge Higginson pointed out, that the defendant has the burden of showing it was likelier than not that he was originally convicted back in 2005 under the residual clause, not under the elements clause. There is nothing whatsoever in the record that would fleshes out a little bit the kind of analysis that the court should go through, and in the context of a 924C conviction, emphasize the trial record. If you look to the trial record here, it's essentially that both parties proposed to the district court a simple one-sentence instruction to the jury, count two is a crime of violence. So there's nothing that can be gleaned from that one way or the other, the definitional clause under which the jury was being told count two is a crime of violence. Once we get to trial, that's exactly what the jury was, indeed, instructed. Simply, you are instructed that count two is a crime of violence. Again, nothing there that would carry the defendant's burden of showing that that instruction was likelier resting on the residual clause. The charge conference, the discussion of the instructions at trial shed no additional light. It was pretty brief. There were no objections related to that instruction. Again, it was an instruction proposed by both sides, and in Clay and in Weiss, this court's prior decision on the 2244B4 gating requirement, the court has additionally said that you can look to the background legal environment at the time as illuminating how the conviction was likely conceived of at the time, and in the government's proposed jury instructions, it cited this court's 1998 decision in Lucas, which described 2241A1 as requiring actual force. The government cited a number of other out-of-circuit decisions, likewise describing 2241A1 as requiring actual physical force, and so that demonstrates it was likely that the district court at the time was conceiving of this predicate as an elements clause predicate, not merely one that would be a qualifying offense under the residual clause, and so for that reason, under this court's precedence, the district court lacked jurisdiction over the petition and should have dismissed it. I will just quickly note on that point the court's 2016 order, which, as Your Honor pointed out, the government hadn't really focused on in our briefing, but I think that is perhaps the nail in the coffin on this argument. I think there's really no way in light of that that the defendant can come back and show that it was more likely than not that he was originally convicted under the residual clause. Why did your brief not identify this at all, the 2016 rule? And why isn't it law of the case? Why was there further litigation at all? Our court said, as to Guidry, based on Williams, the crime charge in count two satisfied the requirements of a crime of violence as set out in 924C3A without requiring resort to the residual clause. I think it was, I probably should have emphasized it more. I don't, I did not intend to waive that argument, waive reliance on that, and I do. Is it binding on us, law of the case, yes or no? Yes, yes, Your Honor, I think it is. You haven't made that argument. I'm sorry? You haven't made that argument anywhere. No, Your Honor, that's correct. A second ground for not, not reaching the merits in this case is the limitations issue. The, you mean timeliness? Yes, Your Honor. I think it's undisputed, as far as I, the district court found it to be timely and you didn't cross appeal. The district court didn't, didn't reach timeliness. Well, it reached the merits, right? Right. It granted him a COA, so it didn't find his appeal to have been on time. Well, it, it included a footnote or a sentence in the order saying that because, uh, because I'm denying relief on the merits, I don't need to reach the timeliness issue. So I don't think anything in the order bars us from urging the limitations issue. We did urge the limitations issue and there's some discussion in the briefing of whether or not, uh, the government sufficiently put that issue before the district court. I think we, we clearly did. You're saying we should reach it even though he attached it when he filed his request for COA to us, he attached it, that would have been timely, but what he didn't himself, pro se, prisoner, no, that didn't suffice to notify the district court. That is the result that this court's requires. And so it's, it's binding precedent that this court's applied a couple of times since that the application, uh, the application for authorization to file the successive petition, which, which always, according to the Fiero decision, always has to include a copy of the, the proposed motion, uh, does not satisfy the limitations, uh, limitations, uh, bar. You still have to file in the district court and that's consistent with... The district court chose to assume it was timely in order to rule, didn't deny. It's correct that the court do. I don't... Therefore, we have that, we have that discretion too. Yes, of course, Your Honor. I mean, I think you could... What about if you get to the merits? As I understand his core argument, it's ultimately this jury was told that they didn't need to find physical force because they could infer it from size disparity. And that that means that there's no conclusive certainty as to a finding of physical force. Would you, would you agree that's their argument? I think that's basically their argument. Yes, Your Honor. I disagree with it. I think that the instructions did... The statutory language itself requires force. I think that, you know, starting with 2241A1, which everyone agrees at this point, I believe, is the basis of the conviction. And the indictment says it, but then the court expands the realm of culpability in its jury instructions. It says, well, in spite of the indictment, in spite of the statute, I'm telling you, you can actually find force because of size disparity. Wouldn't our law then say that there's no certain finding of physical force in this conviction? No, Your Honor. And the Tenth Circuit actually has a really helpful discussion at this point in its 2007 Hawley decision, where it basically says, look, the statute requires force. There is... There are instances in which a size or power disparity can be among the circumstances the jury considers in determining whether there was force, but that doesn't detract. And it's permissible to give that instruction, but that doesn't detract from the requirement of physical force. And I think the jury here was quite clearly instructed that the... In language that tracks 2241A1, the jury was given that language verbatim. The aggravated sexual abuse requires the physical... Requires the use of force against the victim. So that was in there. And I... Help me out a little. When you say the Hawley decision allows that, didn't you have a footnote acknowledging that the Third Circuit and the Seventh Circuit look at it differently? Yes, Your Honor. That's correct. So we would have to agree with the Tenth and disagree with the Third and the Seventh or not? I think that debate is really beside the point because these cases were not dealing with the categorical approach. They weren't talking about whether 2241A1 convictions or 242 convictions resting on that statute served as violent felony or crime of violence predicates. They were simply dealing with whether the jury was, in those particular cases, had correctly been instructed on what aggravated sexual abuse requires. All of the courts apply the statutory language, but on the particular trial records in the Cates case from the Seventh Circuit, the Shaw case from the Third Circuit, the court found... The courts held that there were problems with the instructions that diluted the standard too much. Really, those instructions were indistinguishable from what was given here. In Shaw, the problem that the Third Circuit really had was that there was a disparity instruction that was repeated both for the base offense and then again for the aggravator, and the court said that was confusing. In Cates, it was kind of a combination of things. It was a diluted threat of harm instruction, which didn't even come into play in this case. There was no threat or... Well, the jury sent a note in this case, didn't they? That they needed some clarification on the instructions with regard to force? Yes, Your Honor. The jury asked two questions. One, does the aggravated sexual abuse crime require the use of a weapon? And two, what's the difference between sexual abuse and aggravated sexual abuse? In answering that question, the court basically just repeated the instruction it had already given. So I would disagree with my opponent that the court somehow expanded upon or diluted, further lowered the bar when it was answering the jury's question. The only thing it really added was it repeated verbatim what it had already instructed, so both this... It requires force, and then it went through the disparity instruction again, and then the circumstance you can consider, but it's not controlling. So that was to address the jury's concern about the weapon. And then the court said correctly, and with the agreement of all the parties, don't concern yourself with the difference between sexual abuse and aggravated sexual abuse. There was nothing to suggest that there wasn't a difference. The court simply said, the one that's before you is the aggravated version, so you don't need to worry about what the legal difference is. Just follow my instructions. So there was no expansion there of the original instructions. The other part of the jury instructions that I think is really important is that this court defined, consistent with its precedents, Lucas and Simmons defined a force to be restrained upon the victim sufficient to prevent the victim from escaping the sexual conduct. And that language tracks what the Supreme Court said in Stokeling, satisfies the Elements Clause almost exactly. So the bottom line holding of Stokeling is that force under, for a crime of violence, is force sufficient to overcome a victim's resistance. That is almost verbatim how this court and its precedents is defined, force under 2241A1, and that exact language was what was given to the jury. So I don't think there's any daylight between the standard the jury was told to apply here and the standard that the Supreme Court has announced. I would add that I have been unable to find a federal statute that explicitly requires the use of force against a victim that a court, any circuit, has said does not require sufficient force under Davis, or for 924C. I mean, I just, I think the statutory language itself here goes a long way in explicitly requiring force. I think the judicial interpretation of that language is requiring force to overcome the victim's resistance to sexual conduct, tracks Stokeling exactly. And so if this court reaches the merits, I think it should find that 2241A1, as applied in the context of section 242, is a crime of violence for purposes of 924C. If the court has no further questions, we'd ask that the judgment be affirmed. All right. Thank you, counsel. Roboto. The government brought up the issue of limitations. There is no COA on that, because the judge said, I have resolved this case by looking at the substantive issue. Therefore, there was no ruling on it. They brought it up in their brief. Hence, we had to there was no need for us to go back or even ask this court for a COA. This court can always rule on it independently by itself or send it back to the district court for review. We would also note, I think perhaps one of the most amazing things that the government does say, I want to be careful when I say this, that since COVID, his brief was about 20 days late. And one of the reasons we discussed was he had trouble getting to the law library. He wasn't a lawyer. He's having trouble getting to the law library because it's COVID. And to this, they respond, well, he should have got it in early. From my viewpoint, I have no questions on timing. Okay. And the reason I'm making sure of that is because I don't think we can hold any defendant that he has to be sufficiently clairvoyant to know that there might be a pandemic coming. I think we should have him working for our government if he can do that. That's the only thing we take charge with. If the court has no further questions for me, I will say good afternoon and give my time. Their suits look a heck of a lot nicer than mine. So you'd like them, Your Honor. If there's not any more questions, I apologize. All right. Thank you, Your Honor. Thank you, sir. Court will take this matter under advisement. The next case on